IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STATE FARM FIRE & CASUALTY COMPANY**, as subrogee of the Estate of Alkis J. Marland,<br>      Plaintiff,<br><br>v.<br><br>**HARTMAN CONTRACTORS,**<br>**JOHN GRIMLEY**, trading as "JG ASSOCIATES," and<br>**ANTHONY ELECTRIC,**<br>      Defendants. | **CIVIL ACTION**<br><br><br><br>NO. 14-6535 |

**DuBois, J.**                                                                                         **December 7, 2017**

**MEMORANDUM**

### I. INTRODUCTION

This case arises out of a fire in a townhouse, owned by the Estate of Alkis J. Marland, and insured by plaintiff State Farm Fire & Casualty Company ("plaintiff" or "State Farm"). Plaintiff, as subrogee of the Marland Estate, asserts claims of negligence, breach of contract, and breach of express and/or implied warranties, against defendants Hartman Contractors, John Grimley, and Anthony Electric. Presently before the Court is Defendant John Grimley's Motion in Limine to Preclude Evidence of All and/or Some of the Damages Claimed by Plaintiff. (Document No. 83, filed August 7, 2017) ("Def. Grimley's Mot. in Limine"). For the reasons stated below, defendant Grimley's Motion in Limine is denied.

### II. BACKGROUND

In 2003, Alkis Marland purchased a townhouse located in Phoenixville, Pennsylvania. Def. Grimley's Mot. in Limine ¶ 2. In February 2005, Mr. Marland contracted with defendant

1

John Grimley to install framing and drywall to finish the basement of the townhouse. *Id.* ¶ 4.[1]
On February 9, 2013, a fire occurred in that townhouse. Grimley's Mot. in Limine at 3. The details of the fire and the alleged cause are set forth in the Court's Memorandum dated May 17, 2017. (Document No. 70). Mr. Marland passed away on March 6, 2012, over eleven months prior to the date of the fire. *Id.* at 2. Upon his death the townhouse passed to his Estate. His daughters were named Co-Administrators of the Estate. *Id.*

At the time of the fire, the townhouse was insured by plaintiff State Farm Fire and Casualty Company. *Id.* The property was subject to a primary mortgage secured by Bank of America, N.A. ("Bank of America"). *Id.* at Ex. D; Memo. Supp. Pl.'s Resp. Opp. to Def.'s Grimley's Motion in Limine at 3 (Document No. 85, filed August 21, 2017). The insurance policy contained a standard mortgage clause, stating "[i]f a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and [the insured], as interests appear."[2] Memo. Supp. Pl.'s Resp. Opp. at 7, Ex. A. Accordingly, Bank of America had an insurable interest in the property under the policy. *Id.* at 4.

On March 18, 2013, Bank of America filed an action in foreclosure on the subject property against the Marland Estate. Def. Grimley's Mot. in Limine, Ex. F. Bank of America sold the subject property on September 25, 2013, to Federal Home Loan Mortgage at a sheriff's sale for $2,213.90. Federal Home Loan Mortgage later sold the home to a buyer for $204,900.00. Def. Grimley's Mot. in Limine, Ex. G.

---

[1] Mr. Marland contracted with defendant Anthony Electric to complete the electrical work in the basement at that time. Memorandum at 2, Document No. 70, filed May 17, 2017. In 2006, Mr. Marland contracted with defendant Hartman Contractors to install a drop ceiling and shelving in the closet under the stairs leading from the basement to the first floor. *Id.*

[2] Coverage A under the policy provided insurance coverage for "the dwelling used principally as a private residence. . ." Memo. Supp. Pl.'s Resp. Opp., Ex. A.

On June 12, 2013—after Bank of America initiated the foreclosure action, but prior to the sale of the property to Federal Home Loan Mortgage—plaintiff issued a check in the amount of $365,446.11 to the Bank pursuant to the standard mortgage clause in reimbursement of certain property damage covered under the insurance policy. Memo. Supp. Pl.'s Resp. Opp. at 4. That check was issued to Bank of America after State Farm attempted on two occasions to pay the insurance proceeds to the Marland Estate, which did not accept the check. *Id.* The Bank did not deposit the check issued by State Farm until January 2016. *Id.*

Defendant Grimley filed this *motion in limine* to preclude plaintiff from introducing evidence at trial of the payment in the amount of $365,446.11 made to Bank of America. Grimley argues that State Farm is not entitled to recover the amount paid to Bank of America because the Bank's failure to cash the check until nearly three years after State Farm issued the check rendered the payment voluntary. In response, State Farm claims that it had a legal obligation to pay Bank of America the insurance proceeds pursuant to the standard mortgage clause at the time it sent its check to the Bank, and it should not be precluded from recovery based on the Bank's delay in depositing the check. For the reasons that follow, the Court agrees with State Farm and denies defendant Grimley's Motion in Limine to Preclude Evidence of All and/or Some of the Damages.

### III.  APPLICABLE LAW

Subrogation "is an equitable doctrine involving the right of legal substitution" and "is granted as a means of placing the ultimate burden of a debt upon the one who in good conscience ought to pay it." *Kaiser v. Old Republic*, 741 A.2d 748, 754 (Pa. Super. Ct. 1999). The doctrine of subrogation allows an insurance company "to stand in the shoes of the insured and assert the insured's rights against the tortfeasor." *Id.*

3

Under Pennsylvania law, an insurance company is not entitled to subrogation if the insurance payment was voluntary. *See Union Joint Stock Land Bank of Detroit, Michigan v. Byers*, 100 F.2d 82, 84 (3d Cir. 1938) (citations omitted) ("subrogation will not be decreed in favor of a mere volunteer who without any duty, legal or moral, loans money to pay the debt of another."); *Great Northern Ins. Co. v. Greenwich Ins. Co.*, 2008 WL 2048354 (W.D. Pa. May 12, 2008); *Kemper v. National P&C Companies v. Smith*, 615 A.2d 372, 376 (Pa. Super. Ct. 1992). A volunteer is "a stranger or intermeddler who has no interest to protect and is under no legal or moral obligation to pay under the circumstances." *Massachusetts Bonding & Ins. Co. v. Car & General Ins. Corp.*, 152 F.Supp. 477, 482 (E.D. Pa. 1957). Instead, "the payor must have acted under compulsion, and it is only in cases where the person paying the debt of another will be liable in the event of default or is compelled to pay in order to protect his own interests, or by virtue of legal process, that equity substitutes him in the place of the creditor . . . ." *Kaiser*, 741 A.2d at 754 (quoting *Home Owners' Loan Corp. v. Crouse*, 30 A.2d 330, 331 (Pa. Super. Ct. 1943)). An insurance payment is not voluntary, however, "if it is made with a reasonable or good faith belief in an obligation or personal interest in making that payment." *IAP Worldwide Services, Inc. v. UTi United States, Inc.*, No. 04-CV-4218, 2006 WL 305443, at *10 (E.D. Pa. Feb. 8, 2006).

## IV.    DISCUSSION

Grimley contends that State Farm's payment to Bank of America was voluntary because, at the time that Bank of America deposited the check, Bank of America no longer had an interest in the subject property and therefore had no right to payment under the insurance policy. In response, State Farm asserts that it is the date the check was issued, rather than the date the check was deposited, that is dispositive. At the time State Farm issued the check to

4

Bank of America in 2013, it argues it was under a legal obligation to pay the Bank as the mortgagee of the subject property. When Bank of America deposited the check in January 2016, it had sold the property and failed to obtain a deficiency judgment, and therefore no longer had any interest in the subject property. So, if the payment was deemed to have been made in January 2016 when Bank of America deposited the check, the payment would be considered voluntary. The Court must therefore determine whether State Farm's right to subrogation accrued at the time it tendered payment to Bank of America or at the time the Bank deposited the check.

Grimley relies on *Laurel National Bank v. Mutual Benefit Insurance Co.*, 297 A.2d 473 (Pa. Super. 1982), to argue that Bank of America's foreclosure action and its failure to seek a deficiency judgment "eliminated any rights and obligations that . . . [p]laintiff had as subrogee of the Marland Estate." Def. Grimley's Mot. in Limine at 7. In that case, Laurel National Bank foreclosed on the property and then purchased it at a sheriff's sale before it was damaged by a fire. The bank brought suit to recover damages caused by the fire from the insurer under the homeowner's insurance policy. 297 A.2d at 475. The *Laurel National Bank* court ruled that a mortgagee's interest in a property is protected up the amount of its indebtedness, unless the mortgagee "is fully satisfied after loss by foreclosure or other means, [in which event] the mortgagee may not recover any proceeds under the insurance policy." *Id*. at 481. Accordingly, the mortgagee's insurable interest is limited to "the amount of the mortgage debt since the debt represents its personal interest in the property." *Sotelo v. Washington Mut. Ins. Co.*, 734 A.2d 421 at *6 (Pa. Super. Ct. 1999). The purpose of this rule is to avoid a windfall where a mortgagee could recover the amount of the indebtedness twice—once through recovery in a foreclosure sale and again through recovery of insurance proceeds. *Id.*

5

*Laurel National Bank* is inapposite to the facts of the instant case. Bank of America obtained a default judgment against the Marland Estate in the amount of $532,689.90 on May 9, 2013; Bank of America subsequently sold the property to Federal Loan Mortgage Corporation for $2,213.90[3] on September 25, 2013 at sheriff's sale. Def. Grimley's Mot. in Limine, Ex. G. After the sheriff sale, Bank of America had an outstanding judgment of $530,476.00.[4] Under the rule set forth in *Laurel National Bank* upon which Grimley relies, Bank of America would have been entitled to receive insurance proceeds not to exceed $530,476.00, even if the check had been issued after the foreclosure sale. Since Bank of America received only $365,446.11 from State Farm, there was no windfall. And State Farm tendered the check to Bank of America before it sold the subject property at sheriff's sale and thus retained the full amount of its interest in the property at the time the check was tendered. Moreover, the crux of Grimley's argument is that Bank of America's delayed deposit of the insurance proceeds check rendered the payment voluntary; *Laurel National Bank* has no bearing on whether State Farm's right to subrogation accrued at the time it tendered payment to Bank of America or three years later, when the check was deposited. The Court turns to that issue next.

Payment is defined as "performance of an obligation [usually] by the delivery of money." *Romaine v. Workers' Comp. Appeal Bd. (Bryn Mawr Chateau Nursing Home)*, 901 A.2d 477, 483 (Pa. 2006). A payment made by check "constitutes a conditional payment of the obligation once it is received, the condition being its collectability from the bank on which it was drawn." *Id.* at 483. Pennsylvania courts have previously litigated "the precise moment that a 'payment'

---

[3] Federal Home Loan Mortgage Corporation subsequently sold the home for $204,900.00 to Stephan Bilyk and Olena Bilyk. Def. Grimley's Mot. in Limine, at Ex. H. During a telephone conference on October 13, 2017, counsel advised the Court that they were unaware of the reason for the low price obtained by Bank of America at the sheriff's sale.

[4] This number was calculated by subtracting $2,213.90—the amount Bank of America received at the sheriff's sale—from the outstanding debt obligation of $532,689.90

6

has been made," *Barrett v. Workers Compensation Appeal Board (Vision Quest National)*, 989 A.2d 396, 399 (Pa. Commw. Ct. 2009), and concluded that a payment "relates back to the date when the check was delivered . . . [and] the date of payment for purposes of the obligation or the running of the statute of limitations becomes the date the check was delivered to the payee and not the date that the check was cashed or deposited or the date that the funds were transferred by the bank from which it was drawn." *Romaine*, 901 A.2d at 483 (in an action for workers compensation, the three-year statute of limitations period commenced on the date the check was issued, rather than the date of deposit).

Tax courts have also examined the impact of the delayed deposit of a check to determine whether a check issued in one year but cashed in another year, constitutes a deductible payment for the tax year in which the check was issued. In that context, several courts have concluded that "if under the circumstances of a particular case it is necessary to make a payment at a particular time . . . a check given and received at that time, but not cashed until after the specified time, will operate as a payment as of the date when given." *Estate of Spiegel v. Commissioner*, 12 T.C. 524, 527 (U.S. Tax Ct. 1942); *see Clark v. C.I.R.*, 253 F.2d 745, 748 (3d Cir. 1958) (absent agreement of parties to the contrary, the date of delivery will establish the right to a deduction even if the check is not cashed or deposited until following year); *Bacchus v. United States*, No. 82-CV-3930, 1985 WL 5183, at *3 (D.N.J. July 3, 1985) ("The relation back doctrine . . . allows gifts to be made deductible when intended, rather than when the check representing such gift is actually cashed – a matter beyond the donor's control.").

This Court agrees with those courts that have concluded that, with a delay in cashing or depositing a check, the payment to relates back to the date of delivery of the check. At the time

7

the check was issued and delivered in June 2013,[5] State Farm was under a legal obligation to pay Bank of America, pursuant to the standard mortgage clause as the mortgagee of the subject property. Tellingly, Grimley does not argue that, had Bank of America cashed the check immediately upon receipt in June 2013, State Farm would be barred from bringing the instant subrogation action. And State Farm could neither control nor predict Bank of America's subsequent delay in depositing the insurance proceeds. When Bank of America deposited the check several years later, the date of payment related back to the date the check was issued and delivered in June 2013. At that time, State Farm discharged its obligations under the insurance policy and was entitled to stand in the shoes of its insured. The Court concludes that State Farm's payment to Bank of America was not a voluntary payment and accordingly, it may claim as damages the $365,446.11 payment it made by check to Bank of America.

**CONCLUSION**

For the foregoing reasons, Defendant John Grimley's Motion in Limine to Preclude Evidence of All and/or Some of the Damages Claimed by Plaintiff is denied. An appropriate order follows.

---

[5] The parties do not provide the exact date of delivery; however, the check was issued on June 12, 2013, and according to the parties, sent to Bank of America that same month.